UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| MARIA D. MILLER, | **REPORT AND RECOMMENDATION** |
| Plaintiff, | |
| v. | 18-CV-00583-LJV-JJM |
| BUFFALO PUBLIC SCHOOLS, | |
| Defendant. | |

_____

          Plaintiff alleges violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 *et seq.*, arising from her employment with the defendant Buffalo Public Schools (the "District"). Before the court is the motion of the District to dismiss the Complaint pursuant to Fed. R. Civ. P. ("Rule") 12(b)(6) [7], [1] which has been referred to me by District Judge Lawrence J. Vilardo for initial consideration [8]. Having reviewed the parties' submissions [7, 12], I recommend that the motion be granted in part and denied in part.

## BACKGROUND

          Plaintiff, who worked as a principal at the Lovejoy Discovery School, allegedly suffered injuries in January, April and October 2016 while intervening in incidents of student violence. Complaint [1], ¶¶23, 25. Allegedly her injuries from the October 3, 2016 incident were so severe that her physician advised her not to return to work until at least November 21, 2016, and scheduled her for a medical evaluation on November 14, 2016 to determine whether she could

---

[1]  Bracketed references are to the CM/ECF docket entries, and page references are to numbers reflected on the documents themselves rather than to CM/ECF pagination.

return to work at that time. Id., ¶¶25, 28, 30.² Although the District was allegedly aware of this, it directed plaintiff to return to work on November 14, 2016 in "clear violation of her medical restrictions". Id., ¶¶30, 31. Plaintiff responded to that demand by e-mail, stating that she considered the District's actions to violate the ADA. Id., ¶39.

The alleged result of her November 2016 medical evaluation, as well as a subsequent February 2017 evaluation, was a recommendation by her physician that she not return to work. Id., ¶33. Although that documentation was allegedly forwarded to the District, plaintiff was removed as principal of her school on November 17, 2016. Id., ¶32. At her physician's recommendation, plaintiff applied for and eventually received Workers' Compensation benefits. Id., ¶¶26, 28.

On April 21, 2017, plaintiff allegedly received a letter from the District falsely stating that it had a March 2, 2017 letter from her physician indicating that she could return to work with restrictions, and directing her to report to work. Id., ¶¶34, 41. However, when she allegedly asked for a copy of her physician's letter, the District refused to provide it, and when she contacted her physician, she was informed that the physician had sent documents to her "insurance company . . . on March 16, 2017, with a list of restrictions, but the physician had no record of sending this document to [the District]". Id., ¶¶36, 37. Plaintiff allegedly responded to the District's April 21, 2017 letter on April 28, 2017, with a "formal letter of protest". Id., ¶40.

According to plaintiff, the documents provided by plaintiff's physician to her insurance company "did refer to physical limitations, but also noted [that she] was due for a medical evaluation on May 12, 2017 at which time the physician would recommend whether [she] could return to work". Id., ¶41. The May 12, 2017 evaluation allegedly resulted in a recommendation from her physician that she not return to work. Id., ¶42. Plaintiff alleges that as of September 15,

---

² Although the Complaint [1] indicates that various exhibits are attached (*see, e.g.*, ¶30), none are attached to the filed version.

2017, the District had failed to respond to her April 28, 2017 letter or her subsequent medical evaluations, thereby leaving her job status in "limbo". Id., ¶45.

As a result of this alleged conduct, plaintiff alleges that she was not provided with a reasonable accommodation, was subjected to a hostile work environment, and was subjected to retaliation, all in violation of the ADA.

## ANALYSIS

### A.    Dismissal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. "[T]he movant bears the burden of proof on a 12(b)(6) motion". Alce v. Wise Foods, Inc., 2018 WL 1737750, *2 (S.D.N.Y. 2018).

### B.    Failure to Provide a Reasonable Accommodation

"An employer may . . . violate the ADA by failing to provide a reasonable accommodation." McMillan v. City of New York, 711 F.3d 120, 125 (2d Cir. 2013). "Claims alleging such discrimination are subject to the *prima facie* case framework elaborated by the Supreme Court" in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Dawson v. New

York City Transit Authority, 624 Fed. App'x 763, 766 (2d Cir. 2015) (Summary Order). "A plaintiff states a *prima facie* failure to accommodate claim by demonstrating that (1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." McMillan, 711 F.3d at 125–26. In order to survive a Rule 12(b)(6) dismissal motion, "[t]he facts alleged must give plausible support to the reduced requirements" of plaintiff's *prima facie* case. Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015).

In seeking dismissal, the District appears to focus on the reasonable accommodation requirement. First, it argues that plaintiff's time off request was not a reasonable accommodation, since "no reasonable accommodations existed in order to return her to work". District's Memorandum of Law [7-1], p. 6. In response, plaintiff alleges that "[c]onvalescence time is an accommodation". Plaintiff's Response [12], p. 6. Neither party cites case law on this issue. Although "[t]he ADA does not require an employer to grant an employee an indefinite leave of absence" Stamey v. NYP Holdings, Inc., 358 F. Supp. 2d 317, 324 (S.D.N.Y. 2005), a temporary leave of absence may constitute a reasonable accommodation. *See* Graves v. Finch Pruyn & Co., 2009 WL 819380, *5 (N.D.N.Y. 2009), aff'd, 353 Fed. App'x 558 (2d Cir. 2009) (Summary Order). At this point, with only skeletal arguments before me, I conclude that the District has not met its burden of seeking dismissal of the claim on this basis.

Alternatively, the District argues that it "attempted to accommodate [p]laintiff's disability per her physician's instructions". District's Memorandum of Law [7-1], pp. 6-7. However, that argument ignores the Complaint, which alleges that the physician's determination of whether plaintiff was able to return to work with restrictions was conditioned on the May 12, 2017

medical evaluation, which resulted in a recommendation that she not return to work at that time. Complaint [1], ¶¶41, 42. In fact, the District concedes that the "Complaint is predicated upon the argument that her physician never approved her to return to work with restrictions". District's Memorandum of Law [7-1], p. 8. Therefore, I recommend that this portion of the District's motion be denied.

### C.   Hostile Work Environment Claim

Hostile work environment claims under the ADA "are evaluated under the same standards as hostile work environment claims under Title VII". Naik v. Modern Marketing Concepts, Inc., 2018 WL 4078264, *5 (N.D.N.Y 2018).[3] A hostile work environment arises where "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993). In order to establish a hostile work environment claim, plaintiff "must demonstrate that the conduct occurred because of" her disability. Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002); Caesar v. Riverbay Corp., 2017 WL 6887597, *11 (S.D.N.Y. 2017).

As the District notes, the Complaint "spends a considerable amount of time discussing her work experience prior to her injuries (¶¶ 17-24)". District's Memorandum of Law [7-1], p. 7. It argues that those portions of her claim arising from conduct that she experienced prior to the onset of her disability should be dismissed. Id. I agree.

The Complaint [1] alleges that plaintiff was subjected to a hostile work environment "based on her disability". Complaint [1], Wherefore Clause, ¶C. While the Complaint does not

---

[3]   "The Second Circuit Court of Appeals has not yet decided whether the ADA provides a basis for a hostile work environment." Naik, 2018 WL 4078264, *5 n. 1.

clearly identify plaintiff's disability or its onset (id., ¶¶13, 25), plaintiff does not dispute the District's argument that according to the Complaint, her disability arose no earlier than January 2016, when she was allegedly first injured at work. District's Memorandum of Law [7-1], p. 7. Since all of the workplace conduct that preceded her alleged disability "cannot possibly have been 'because of' a disability she did not yet have" Young v. Giant Food Stores, LLC, 108 F. Supp. 3d 301, 309 n. 6 (D. Md. 2015), I recommend that this portion of the claim be dismissed.

With respect to conduct that plaintiff allegedly experienced after the onset of her disability, the District argues that "[t]he Complaint is simply devoid of incidents and occurrences that . . . would buttress a hostile work environment", with the "possible exceptions" of "the Worker's Compensation hearings . . . and the attempt to return the Plaintiff to work". District's Memorandum of Law [7-1], p. 7.[4] For the reasons discussed above, the allegations of the Complaint, which I must credit for purposes of this motion, contradict the District's contention that it had a valid basis for attempting to return plaintiff to work. *See* Complaint [1], ¶¶41, 42. Therefore, absent any other arguments by the District, I conclude that it has not met its burden of demonstrating that this portion of the claim should be dismissed.

**D.    Retaliation Claim**

Claims for retaliation are analyzed under the same burden-shifting framework established for Title VII cases. . . . In order to establish a *prima facie* case of retaliation, [a plaintiff] must show that: (1) he engaged in an activity protected by the ADA; (2) the employer was

---

[4] Although not raised by the District, I question whether its alleged conduct in attempting to return plaintiff to work (*i.,e.*, conduct occurring outside of the workplace) can establish a hostile work environment claim. See Krachenfels v. North Shore Long Island Jewish Health System, 2014 WL 3867560, *10 (E.D.N.Y. 2014) (conduct that occurs "when plaintiff was on leave, has no bearing on plaintiff's hostile work environment claim, which requires evidence of harassment in the 'workplace'").

aware of this activity; (3) the employer took adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity." Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002). "An 'adverse employment action' is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities. . . . Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003).

The District challenges whether plaintiff sustained an adverse employment action. First, it argues that plaintiff does "not allege that she has been terminated, demoted, received a pay reduction, or had her title as principal changed", and that "the District twice tried to return her to work in November of 2016 . . . and subsequently in April of 2017". District's Memorandum of Law [7-1], p. 8. However, as plaintiff argues (plaintiff's Response [12], p. 9), the Complaint alleges that in November 2016, she "was removed as principal of her school" (Complaint [1], ¶32), and that the District later stopped communicating with her about her job status. Id., ¶¶45, 64.[5] Since it appears from the allegations of the Complaint that plaintiff was not offered any other position, much less a comparable position, the District's arguments fail. See Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004) ("demotion evidenced by a decrease in wage or salary [or] a less distinguished title" constitutes adverse employment action").

The District also argues that plaintiff did not sustain an adverse employment action, since she fails to "allege that her physician – at any time – indicated she could return to work". District's Memorandum of Law [7-1], p. 8. In response, plaintiff argues that the Complaint "makes

---

[5]   Although not argued by the District, it is not evident that plaintiff alleges this to be a retaliatory adverse employment action. See Complaint [1], ¶¶45-48, 64.

clear [that she] was undergoing frequent medical evaluations and did expect to return to work". Plaintiff's Response [12], p. p. 9. Although the Complaint does not expressly allege that plaintiff was ever cleared to return to work, it does allege that the District "refused to communicate with [her] regarding . . . *possible return dates for work*" (id., ¶64 (emphasis added)), thereby suggesting that at some point she was able to return to work. Accepting the allegations of the Complaint as true for purposes of this motion, I conclude that the District has not met its burden of demonstrating that this claim should be dismissed. See Smyth v. Wawa, Inc., 2008 WL 741036, *14 (E.D. Pa. 2008) (rejecting the defendant's argument that the plaintiff's termination did not qualify as an adverse employment action because a triable issue of fact existed as whether the plaintiff was able to return to work at the conclusion of her leave).

## CONCLUSION

For these reasons, I recommend that the District's motion to dismiss [7] be granted to the extent that it seeks dismissal of plaintiff's hostile work environment claim for conduct predating the onset of her disability, but otherwise be denied. Unless otherwise ordered by Judge Vilardo, any objections to this Report and Recommendation must be filed with the clerk of this court by November 20, 2018.

Any requests for extension of this deadline must be made to Judge Vilardo. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985). Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge

in the first instance. <u>Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: November 6, 2018

<u>/s/ Jeremiah J. McCarthy</u>
JEREMIAH J. MCCARTHY
United States Magistrate Judge
