UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| MARIA D. MILLER, | REPORT AND RECOMMENDATION |
| Plaintiff, | |
| v. | 18-CV-00583-LJV-JJM |
| BUFFALO PUBLIC SCHOOLS, | |
| Defendant. | |

_____

Plaintiff alleges violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 *et seq.*, arising from her employment with the defendant Buffalo Public Schools (the "District"). Before the court is the District's motion for summary judgment pursuant to Fed. R. Civ. P. ("Rule") 56 [34], [1] which has been referred to me by District Judge Lawrence J. Vilardo for initial consideration [8]. Having reviewed the parties' submissions [34, 40, 41], I recommend that the motion be granted.

## BACKGROUND

Plaintiff was employed by the District as a Principal since 2010. District's Statement of Undisputed Facts [34-1], ¶¶1, 13. During separate physical altercations with students on January 27, April 7, and October 3, 2016, plaintiff suffered injuries to her back. Id., ¶¶18, 20, 22. Because of these injuries, she ceased working on October 7, 2016, and was granted Workers' Compensation benefits. Id., ¶¶23-24.

---

[1]   Bracketed references are to CM/ECF docket entries, and page references are to CM/ECF pagination.

Plaintiff's physician provided an initial note indicating that she would be able to return on October 18, 2016 [34-7], but the subsequent series of notes from that physician were less definitive, the last of which noted that she would "remain out of work pending reevaluation on . . . November 22, 2016" [34-8].  In anticipation of plaintiff's eventual return to work, by letter dated November 10, 2016 [34-9] Terence Mazepa, the District's Director of Employment Services, directed plaintiff to report to the District's offices on November 14, 2016 for a meeting with her union representative present.  Mr. Mazepa also informed plaintiff of the meeting by telephone. District's Statement of Undisputed Facts [34-1], ¶27.  The purpose of the meeting was to discuss plaintiff's assignment.  District's Statement of Undisputed Facts [34-1], ¶26; Mazepa Declaration [34-3], ¶10.

By contrast, plaintiff states that she received "a phone call and a letter to report to work" on November 14, 2016.  Plaintiff's deposition transcript [34-20] at 21.  She responded by e-mail dated November 11, 2016:

> "I am out on disability until Nov 21st 2016, pending re-evaluation from my doctor . . . . [Y]our request for me to 'report' to the district office is a violation of the ADA and State Disability Law and is illegal and discriminatory.  The directive has caused me stress and has exacerbated my injury.  Until I am cleared to return to work, it is imperative that I be left alone to heal, which is my right.  Any further directive communication requiring my attendance will be seen as an intentional act to harm me" [34-10].

Upon receipt of plaintiff's response, the District elected not to proceed with the meeting.  District's Statement of Undisputed Facts [34-1], ¶29.  Instead, it informed plaintiff by letter [34-11] of what it intended to discuss at the meeting:  "Due to organizational restructuring within Buffalo Public Schools, we are reassigning you to another school for the remainder of the 2016-2017 instructional year.  Upon your return from Worker's Compensation leave, we will

schedule a meeting to discuss your new assignment and answer any questions you may have". District's Statement of Undisputed Facts [34-1], ¶¶29-30.

In March 2017, the District's Workers' Compensation administrator received a Physical Capabilities Form [34-12] dated March 16, 2017 from Mary Kauderer, M.D. District's Statement of Undisputed Facts [34-1], ¶33. The Form indicated that plaintiff had no restrictions walking, some limitations standing and sitting, and that she was able to lift and carry between 11-20 pounds. [34-12] at 1. On the portion of the Form that asked for the date plaintiff could return to work with these restrictions, Dr. Kauderer wrote "estimate: 5/17/17". Id.

As a result of Dr. Kauderer's evaluation, Mr. Mazepa informed plaintiff by letter dated April 21, 2017 [34-13] that her physical limitations could be "temporarily accommodated", and that she could return to her "pre-accident position". Plaintiff was also informed that she would "be contacted shortly" and to "anticipate an assignment scheduled in the next 7-10 days". Id. Mr. Mazepa closed the letter by stating that the District looked forward to plaintiff's return and would "work with [her] . . . for a smooth transition back to work". Id.

In anticipation of plaintiff's May 17, 2017 return to work, the District directed plaintiff by letter dated April 27, 2017 [34-14] to report for "a meeting". District's Statement of Undisputed Facts [34-1], ¶¶35-36. Plaintiff's counsel responded by letter April 28, 2017 [34-15] that the District's April 21, 2017 letter had "misrepresent[ed] [plaintiff's] return to work status", and "for the second time" was "violating [her] rights under the ADA". Id. at 2. The letter attached an April 28, 2017 note from Dr. Kauderer, who stated:

> "I . . . have recommended (per multiple letters I have written on her behalf) that [plaintiff] remain out of work at least until I am able to re-evaluate her on 5/12/17. I had estimated a return to work date with modified duty as 5/17/17 on the . . . form; however, please realize this was an estimate. This was based upon information from

her 2/17/17 treatment date, and more updated evaluation . . . on 5/12/17 would be required for me to further comment on a feasible return to work date at this time". Id. at 4.[2]

As a result of Dr. Kauderer's updated note, the District elected to cancel the meeting. District's Statement of Undisputed Facts [34-1], ¶39. Following plaintiff's May 12, 2017 evaluation, Dr. Kauderer continued to excuse her from work. See [40-9] at 8-9. During this period, plaintiff continued to collect the same Workers' Compensation benefits and pay.[3] Id., ¶40. She also did not inquire with the District about her employment status "because my doctor hadn't released me yet, so I would have nothing to call about". Plaintiff's deposition transcript [34-20] at 53. Eventually, on April 26, 2019, the Workers' Compensation Board found plaintiff to be permanently totally disabled as a result of her injuries. District's Statement of Undisputed Facts [34-1], ¶41.

Based on these facts, plaintiff alleges that she was not provided with a reasonable accommodation, was subjected to a hostile work environment, and was subjected to retaliation, all in violation of the ADA. Complaint [1]. The District's initial motion to dismiss the Complaint pursuant to Rule 12(b)(6) was granted to the extent that it sought the dismissal of plaintiff's hostile work environment claim for conduct predating the onset of her disability, but was otherwise denied. See Miller v. Buffalo Public Schools, 2018 WL 9596925 (W.D.N.Y. 2018), adopted, 2019 WL 4394136 (W.D.N.Y. 2019).

---

[2] Plaintiff submits notes from Dr. Kauderer dated December 16, 2016 ([40-9] at 4), February 17, 2017 (id. at 5), and March 31, 2017 (id. at 6), each addressed "To Whom it May Concern" and directing that plaintiff remain out of work pending her next reevaluation, the last of which was scheduled for May 12, 2017.

[3] The Collective Bargaining Agreement required the District to make supplemental payments to plaintiff for five years to ensure that she continued to receive her full pay and benefits. District's Statement of Undisputed Facts [34-1], ¶43.

## ANALYSIS

A. **Summary Judgment Standard**

"Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant. Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003).

B. **Failure to Provide a Reasonable Accommodation**

"An employer may . . . violate the ADA by failing to provide a reasonable accommodation." McMillan v. City of New York, 711 F.3d 120, 125 (2d Cir. 2013). "Claims alleging such discrimination are subject to the *prima facie* case framework elaborated by the Supreme Court" in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Dawson v. New York City Transit Authority, 624 Fed. App'x 763, 766 (2d Cir. 2015) (Summary Order). "To establish a *prima facie* case of discrimination based on an employer's failure to accommodate a disability . . . a plaintiff must demonstrate that (1) the plaintiff is a person with a disability under the meaning of [the ADA]; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue;

and (4) the employer has refused to make such accommodations." Natofsky v. City of New York, 921 F.3d 337, 352 (2d Cir. 2019), cert. denied, 140 S. Ct. 2668 (2020).

The District concedes that plaintiff satisfies the first two elements of the claim, but disputes that she has established that she could perform the essential functions of her job with a reasonable accommodation or that it refused to make such an accommodation. District's Memorandum of Law [34-2] at 12. According to plaintiff, the reasonable accommodation that she requested was to "[b]e allowed to heal". Plaintiff's deposition transcript [34-20] at 36. In other words, "[n]ot require [her] to come to work when [she was] under medical care". Id. Plaintiff acknowledges that she did not make a request for a reasonable accommodation, but instead points to the medical notes provided to the District as constituting such a request. Id. at 36-38.

"While temporary leave, for a specified period of time, with clear prospects for recovery, could be a reasonable accommodation . . . an indefinite leave of absence is not." Booker v. Soho Studio Corp., 2020 WL 363912, *5 (E.D.N.Y. 2020). *See also* Miller, 2018 WL 9596925, *2 ("[a]though the ADA does not require an employer to grant an employee an indefinite leave of absence . . . a temporary leave of absence may constitute a reasonable accommodation"). Since plaintiff never requested a specific period of leave and was never cleared to return to work, the accommodation she sought - an indefinite leave of absence - was unreasonable.

Moreover, even if the requested accommodation could be considered reasonable, plaintiff was granted the leave of absence which she sought. From October 7, 2016 through April 26, 2019, when the Workers' Compensation Board determined that she was permanently and totally disabled (*i.e.*, unable to return to work with any accommodation), plaintiff remained on leave. Crediting plaintiff's version of events, the District directed her to return to work (as opposed to appear for a meeting) on November 14, 2016 (plaintiff's deposition transcript [34-20] at 21) and

May 2, 2017 (id. at 31; plaintiff's Memorandum of Law [40] at 7). However, it is undisputed that in both instances, the District relented and she was permitted to remain on leave without ever reporting for work or even a meeting. This is fatal to plaintiff's reasonable accommodation claim. *See* Blodgett v. 22 S. St. Operations, LLC, 828 Fed. App'x 1, 3-4 (2d Cir. 2020) (Summary Order) ("even assuming that [the plaintiff's] request for a leave of absence constituted a request for a reasonable accommodation, the record is clear that [her employer] in fact granted her request for leave . . . . As a result, [the plaintiff] has failed to demonstrate that her employer refused to make such accommodations . . . which is fatal to her *prima facie* case of disability discrimination").

        Plaintiff's arguments do not persuade me otherwise. Primarily, she disputes that the March 16, 2017 Physical Capabilities Form completed by Dr. Kauderer was sent to the District. District's Memorandum of Law [40] at 6, 16. According to plaintiff, the Form was sent to her insurer (id. at 6), but Dr. Kauderer stated that "she never sent such a letter to the [District]". Id. at 16. Plaintiff contends that "[t]his question of Dr. Kauderer's letter raises a material issue of fact as to whether this medical evidence exists and therefore raises issues about the intent of the [District]". Id. at 16.

        Initially, it is not evident how the District's "intent" bears upon whether her requested accommodation was reasonable or whether the District provided a reasonable accommodation to her. In any event, any dispute as to whether the District received Dr. Kauderer's March 16, 2017 evaluation or whether it even existed are belied by the record, which demonstrates that the District possessed and acted upon it [34-12]. Nor is the District's possession of Dr. Kauderer's evaluation untoward, as plaintiff suggests - in fact, it would be expected. By "sending medical documentation to an employer's workers' compensation administrator, it is only logical to assume that the information will also be forwarded to the employer, particularly if the medical

documentation advises of a potential return to work date". Scarpine Reply Declaration [41], ¶20. Therefore, I recommend that plaintiff's reasonable accommodation claim be dismissed.

### C.     Hostile Work Environment Claim

To establish a claim of hostile work environment under the ADA, a plaintiff "must show, *inter alia*, that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her work environment and that the harassment was based on her protected group. A plaintiff must show not only that she subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive." Harvin v. Manhattan & Bronx Surface Transit Operating Authority, 767 Fed. App'x 123, 128 (2d Cir. 2019) (Summary Order). *See also* Fox v. Costco Wholesale Corp., 918 F.3d 65, 74 (2d Cir. 2019) (holding, as a matter of first impression, that hostile work environment claims are actionable under the ADA).

Here, it is undisputed that plaintiff did not experience a workplace permeated with discrimination: since any alleged harassment plaintiff experienced occurred while she was on leave, she cannot establish a hostile work environment claim. *See* Gillman v. Inner City Broadcasting Corp., 2011 WL 181732, *1 (S.D.N.Y. 2011) (since the plaintiff was on leave, "there is no dispute that the alleged incidents did not take place in the 'workplace,' [the plaintiff] cannot make out a hostile work environment case"); Krachenfels v. North Shore Long Island Jewish Health System, 2014 WL 3867560, *10 (E.D.N.Y. 2014) (conduct that occurred while the plaintiff "was on leave, has no bearing on plaintiff's hostile work environment claim, which requires evidence of harassment in the 'workplace'"); Rubin v. Abbott Laboratories, 2015 WL 5679644, *8 (S.D.N.Y.

2015) (dismissing a hostile work claim where the "plaintiff was on leave when [the incident] occurred; she was not even in the workplace").

In any event, plaintiff has failed to establish that she experienced discriminatory intimidation that was sufficiently severe or pervasive to create a hostile work environment. While plaintiff argues that the District "engaged in a program of failing to accommodate [her]" (plaintiff's Memorandum of Law [40] at 16), "a defendant's failure to provide a reasonable accommodation does not in itself constitute evidence of a parallel claim for . . . hostile work environment". Murtha v. New York State Gaming Commission, 2019 WL 4450687, *13 (S.D.N.Y. 2019); Greenbaum v. New York City Transit Authority, 2021 WL 2650509, *11 (S.D.N.Y. 2021) ("Greenbaum argues that the Defendants created a hostile work environment when they failed to provide him with the ergonomic keyboard that he requested. If this failure had existed, it might constitute a failure to accommodate a disability; it would not constitute a hostile work environment"); Barton v. Warren County, 2020 WL 4569465, *10 (N.D.N.Y. 2020) ("to the extent that Plaintiff . . . relies on the rejection of reasonable accommodations to plausibly suggest a hostile work environment . . . she misconstrues the law").

Plaintiff also argues that the hostile work environment included "a program" of "holding her accountable for things of which she had not [sic] part, of accusations of failure to perform made without rational basis to do so, and of creating an environment so permeated with intimidation as to cause a change in the terms and conditions of [her] employment". Plaintiff's Memorandum of Law [40] at 16. This is a verbatim rehash of the allegation at paragraph 59 of the Complaint [1]. However, plaintiff's hostile work environment claim for conduct predating the onset of her disability was previously dismissed (Miller, 2018 WL 9596925, *4), and it appears that all of this alleged conduct preceded the onset of her disability and her leave from work in October 2016.

Plaintiff further testified that she considered the "constant" communications from the District to be harassment. Plaintiff's deposition transcript [34-20] at 49. However, she acknowledged that the so-called "constant" communications consisted of only a single letter and voicemail in November 2016, and one letter and up to two voicemails in April 2017, all concerning her return to work. Id. Even crediting plaintiff's version of events that these were demands to return to work, they were not sufficiently severe or pervasive (either individually or collectively) to create a hostile work environment, especially since the District did not follow through on requiring her to return to work. Therefore, I recommend that plaintiff's hostile work environment claim be dismissed.

### D.  Retaliation Claim

"Claims for retaliation are analyzed under the same burden-shifting framework established for Title VII cases . . . . In order to establish a *prima facie* case of retaliation, [a plaintiff] must show that: (1) [s]he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against h[er]; and (4) a causal connection exists between the alleged adverse action and the protected activity." Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002). "An 'adverse employment action' is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities. . . . Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003).

Plaintiff argues that in response to her protected activity of making a "written complaint of discrimination", the District "refused to communicate with [her] regarding her status with the District or possible return dates for work". Plaintiff's Memorandum of Law [40] at 17. Even if plaintiff's November 11, 2016 e-mail [34-10], and her counsel's April 28, 2017 letter [34-15], both complaining of ADA violations, constituted protected activities, there is no evidence that the District took any adverse employment action in response.

Since it is undisputed that plaintiff has never been medically cleared (with or without restrictions) to return to work, the District's failure to contact plaintiff since April 2017 about her work status and possible return dates for work cannot constitute an adverse action. In fact, plaintiff acknowledged that she had not contacted the District since that time to inquire about her employment status for that very reason. *See* Plaintiff's deposition transcript [34-20] at 53 ("because my doctor hadn't released me yet, I would have nothing to call about"). On the other hand, when the District earlier reached out to plaintiff in November 2016 and April 2017 about her eventual return to work, she alleged that it was violating the ADA. The plaintiff cannot have it both ways. Therefore, I recommend that this claim be dismissed.

## CONCLUSION

For these reasons, I recommend that the District's motion for summary judgment [34] be granted. Unless otherwise ordered by Judge Vilardo, any objections to this Report and Recommendation must be filed with the clerk of this court by November 18, 2021.

Any requests for extension of this deadline must be made to Judge Vilardo. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155

(1985). Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated:  November 4, 2021

/s/Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge